422 A.2d 521

CAPITAL BAKERS, INC.

v.

LOCAL UNION NO. 464 OF the BAKERY AND CONFECTIONARY WORKERS INTERNATIONAL UNION (AFL–CIO) OF AMERICA and Everett S. Miller and Paul Brunner as well as John Doe and Richard Roe (the latter two names being fictitious, real names being unknown), and any other members or agents of Local Union No. 464 acting in concert, Appellants.

Superior Court of Pennsylvania.

Argued March 6, 1980.

Filed Aug. 22, 1980.

Reargument Denied Dec. 3, 1980.

386

Margaret Browning, Philadelphia, for appellants.

C. Grainger Bowman, Harrisburg, for appellee.

Before CERCONE, President Judge, and WATKINS and MONTGOMERY, JJ.

WATKINS, Judge:

This is an appeal from the order of the Court of Common Pleas of Dauphin County, and involves appellant–defendants' appeal from orders of the court below issuing an injunction against defendants and then finding defendants in contempt of court for refusing to obey the injunction.

The appellee is an employer and appellants are a union, its officers, and certain other union members. On November 14, 1978, the appellants began a strike at the appellee's facilities as a result of appellee's refusal to recognize Local Union 464 as its employees' bargaining unit and its subsequent refusal to bargain with the Union. On December 5, 1978, the appellee filed a Complaint in Equity against appellants seeking an injunction against appellant. A hearing thereon was held on December 7, 1978, after which the court below issued an injunction against appellants restraining them from certain, specific activities. On December 18, 1978, appellants filed Preliminary Objections to the Complaint in Equity alleging that the court below did not have

jurisdiction over the matter because such jurisdiction rested exclusively with the National Labor Relations Board and because the Pennsylvania Labor Anti–Injunction Act (*43 P.S. 206a et seq.*) divested the court of jurisdiction of the matter. On January 4, 1979, the appellee filed a Petition for Contempt against appellants alleging that appellants should be held in contempt of court for violating the December 7, 1978 Order. A hearing on the contempt petition was held on February 9, 1979, after which the court below found appellants to be in contempt of court, ordered that a black van vehicle used by appellants as their strike headquarters be moved a distance of at least one–quarter mile from any entrance to appellee's premises, and ordered the Union to post a bond in the amount of $25,000 within ten (10 days the purpose of which was to indemnify appellee, its officers, employees, suppliers and other third persons entering or leaving appellee's premises of all damages they may suffer at the hands of the union or its agents in violation of the December 7, 1978 Order. Appellants filed timely appeals from both the Order of December 7, 1978 (Injunction Order) and the Order of February 9, 1978 (Contempt Order). Both appeals are consolidated for disposition in the instant case.

Appellants' first argument is that the Injunction Order of December 7, 1978 was unlawful because the court below did not have jurisdiction over the matter; jurisdiction being pre–empted by the National Labor Relations Board and the Pennsylvania Labor Anti–Injunction Act. They also argue that the facts adduced at the hearing held on the Complaint in Equity (Injunction Hearing) do not support the court's granting of the injunction. Appellants also argue that the court below erred in finding them in contempt of court because insufficient evidence of contumacious conduct was adduced at the contempt hearing of February 9, 1979 and because the Contempt Order was illegal since it contained no condition by which the appellants could purge themselves of the contempt.

█ The Pennsylvania Labor Anti–Injunction Act (*43 P.S. 206a et seq.)* limits the jurisdiction of courts over labor

disputes to certain specific situations. However, state·
courts do have the power to restrain violence, mass picketing
and overt threats of violence and to preserve and protect
public order and safety and to prevent damage even if,
absent such conduct, the activities complained of would
constitute unfair labor practices or protected activities over
which the National Labor Relations Board would have juris-
diction. *43 P.S. 206d*; *Altemose Construction Company v.
Building and Construction Trades Council*, 449 Pa. 194, 296
A.2d 504 (1972); *San Diego Building Trades Council v.
Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).
State jurisdiction has prevailed in such instances because the
compelling state interest, in the scheme of our federalism, in
the maintenance of domestic peace is not overridden in the
absence of clearly expressed congressional direction. *San
Diego Building Trades Council*, supra. The issue, therefore,
is whether the appellants' conduct was such that it justified
the injunctive relief granted appellee in the December 7,
1978 Order.

■ The record demonstrates that the strikers engaged in
various acts of violence and coercion from November 14,
1978 to the date of appellee's Complaint in Equity. The
strikers had, on numerous occasions spread roofing nails on
the access ways to appellee's facilities, thrown at and broken
many windows of appellee's buildings, had threatened non-
striking employees of appellee, appellee's suppliers, and the
friends and families of non–striking workers. The threats
were accompanied by rock–throwing and occurred both at
the plant site and the homes of the various people who were
threatened. It was also proven that vehicles of non–striking
members were shot at and hit by gunfire and were damaged
by paint and rocks. Appellee's supplier's had their vehicles
damages by the painting of obscenities thereon. One picket-
er, a David Neff, jumped upon a departing tractor–trailer
of the appellee and "disconnected the lines" between the
tractor and trailer. On another occasion Neff diverted the
attention of one of the working company truckers while
another striking employee, a Barry Newhouse, severed the

pneumatic brake line of a tractor–trailer with wire cutters. Windows at the appellee's Harrisburg offices were shot through and fourteen holes were shot into the vestibule of the plant's office. On another occasion a concrete slab, weighing 250 pounds and measuring four feet in length, was dropped onto one of appellee's trucks as it was being driven under a bridge. It was also established that the spreading of roofing nails on the driveways, picketing, and threats interfered with ingress and egress to appellees' plant making it difficult for non–striking employees and suppliers to enter and leave the plant. While it could not be established beyond a reasonable doubt that every event described above was either ordered or engaged in by the union officers or performed by a union member such is not necessary to justify the issuance of an injunction. "It is true that of a union as of an employer that it may be responsible for acts which it has not expressly authorized or which might not be attributable to it on strict application of the rules of respondent superior." *Milk Wagon Drivers Union of Chicago, Local 753 v. Meadowmoor Dairies*, 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836 (1941). The evidence presented at the injunction hearing establishes a sufficient link between the striking union and the above–mentioned acts of violence and coercion so as to justify the injunction which restricted the number of picketers to pairs of strikers, standing ten feet apart, enjoined the picketers from interference with the company's employees in the performance of their duties, enjoined interference with vehicular ingress and egress, restrained picketing on Company premises, and enjoined the threatening of or inflicting of any injury on or to the appellee's employees, its suppliers, or their families. State courts do have jurisdiction to issue injunctions in labor disputes where, during the course of the dispute, the union, employers, or any combination of same, "seize, hold, damage, or destroy the plant, equipment, machinery, or other property of the employer with the intention of compelling the employer to accede to any demands, conditions, or terms of employments, or for collective bargaining." *43 P.S. 206d.*

Considering the testimony adduced at the injunction hearing with respect to acts of violence and the fact that a sufficient nexus between the appellants and the acts of coercion and violence was demonstrated, we hold that the court below did have sufficient facts before it justifying the issuance of its injunction order.

■ Appellants' other arguments concern the Contempt Hearing. At the Contempt Hearing it was demonstrated that additional shots were fired into appellee's plants windows subsequent to the time of the Injunction Order, that windows were smashed by thrown bottles, that tires were slashed and burned, windows of non–striking employees' vehicles were broken or shot out, and bottles had been observed being thrown at the plant's windows from the back of a black van. The testimony also revealed that the local police were called to investigate these incidents, that the persons responsible for the incident would then leave, but that after the police left the area, they would return to the plant site and resume the type of activities described above. Thus, it is clear that the court below did not err in finding appellants in contempt of its injunction order.

■ Appellants argue that the Contempt Order was improper. We do not agree. It is apparent that the Contempt Hearing was a civil proceeding because the purpose of the Contempt Order was directory and compensatory. The purpose of a contempt proceeding determines whether it is civil or criminal. If the dominant purpose thereof is to vindicate the dignity and authority of the court and to protect the interest of the general public the contempt proceeding is criminal in nature. But where the dominant purpose of the proceeding and contempt order is primarily for the benefit of a private party, and the order is remedial, and judicial sanctions are imposed (1) to coerce the defendant into compliance with the court's order, and (2) in some instances to compensate the complainant for losses sustained, the proceeding is civil in nature. *Knaus v. Knaus*, 387 Pa. 370, 127 A.2d 669 (1956); *Philadelphia Marine Trade Association, et al. v. International Longshoremen's Associa-*

*tion Local Union No. 1291 et al.*, 392 Pa. 500, 140 A.2d 814 (1958). The contempt order of February 9, 1978 was clearly civil in nature as it was issued primarily for the benefit of a private party (appellee), was directory in nature (in that it set limits on the location of the black van which appeared to be the source of many of the violent acts), and was compensatory (requiring appellants to post a $25,000 bond to compensate the appellee or others from further financial losses caused by damage to property or injury to people as a result of the picketers activities).

■ Appellants' final argument is that the Contempt Order was unlawful because it failed to set forth any condition by which appellants could purge themselves of contempt. Appellants cite several cases which held that a contempt order *which imposes punishment for civil contempt* must state a condition upon which fulfillment thereof will result in the release of the defendant or remission of the fine or penalty imposed. (Emphasis ours) *Casco Products Corp. v. Hess Brothers*, 184 Pa.Super. 47, 132 A.2d 922 (1957); *Knaus v. Knaus*, supra; *South Fayette Township v. Boy's Home*, 31 Pa.Cmwlth. 254, 376 A.2d 663 (1977); *Phila. Marine Trade Association v. International Longshoremen's Association*, supra. While this is a correct statement of the law the principle involved in those decisions does not apply to this case. This is so because in each of the above cases the contempt order provided for imprisonment or a fine, in other words, punishment of the offender. In our case the court below imposed no such fine nor term of imprisonment on the appellants. The Contempt Order merely directed the removal of the van to a site not less than one–quarter mile away from any plant entrance and required the appellants to post a bond in order to insure that any future financial losses inflicted upon certain entities by the violent acts of the appellants would not go uncompensated. Thus, the bond was intended to compensate the Company and others only for proven damages caused by a violation of the injunction. As such it did not constitute a fine and since appellants were not punished in any other manner by the contempt order it

392

was not necessary for the court to set any condition the fulfillment of which would purge the appellants of the punishment. We hold, therefore, that a contempt order which does not provide for the punishment of the defendant need not contain conditions by which the defendant may purge himself of the contempt.

Orders affirmed.