## Schnabel Associates, Inc. v. The Building and Construction Trades Council of Phila. and Vicinity AFL-CIO

*Lawrence S. Coburn,* for plaintiff.

*Richard B. Sigmond,* for defendant Building and Trades Council.

*John M. Gallagher,* for defendants Lyons, McClintock, Riddle, Garvey.

*William J. Einhorn,* for defendant Scott.

DIGGINS, SR., *J.*, October 22, 1982—The matter now before this court involves a petition to have defendants held in civil and indirect criminal contempt.

Plaintiff is a construction company developing a project, known as Bethesda House in Upper Chichester Township, Delaware County. Defendant, Building & Construction Trades Council of Philadelphia and Vicinity AFL-CIO, (hereinafter called council) is an unincorporated association composed of unions in the Philadelphia area, all of whom are associated with the building and construction work. The council is comprised of and represents most of the construction unions in the Philadelphia area. The individually named defendants are all members of unions which belong to the council.

In December, 1981, plaintiff petitioned this court for an injunction to limit the picketing at its job site. On December 3, 1981, this court entered a preliminary injunction limiting the number of pickets at each entrance to the job site. Since the entry of our order of December 3, 1981, plaintiff contends that

defendants have violated said order by committing acts of violence on the picket line.

We note here that the Bethesda House project is being constructed by non-union labor and that the council has authorized and established a picket line around this project.

The acts of violence which took place range from blocking ingress and egress from the job site to the hurling of rocks and explosive devices as well as the firing of gunshots at persons on the job site.

Much evidence was presented, and we will not attempt to duplicate it here.

The only issues raised here are:

1. Whether the council can be held responsible for acts of violence which occurred on a picket line established by it?

2. Whether the individual members of a union are in violation of the order of December 3, 1981?

The order of December 3, 1981, enjoined the council, its agents, representatives from blocking the ingress, egress and from committing acts of violence. This order was amended from time to time, but always included in the orders was a prohibition of acts of violence. Council was served with a copy of all Orders.

Council contends that since it never authorized any acts of violence, it can not be held responsible for these acts. In support thereof, it cites United Mine Workers v. Gibbs, 383 U.S. 715, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966) and relying on Section 6 of the Norris-LaGuardia Act, 29 U.S.C. §116, which states that a labor organization shall not be held liable for any unlawful acts of its members, or by any individual, unless clear proof exists with respect to its actual participation, prior authorization or ratification of the unlawful acts. This court is mindful of the above and agrees that clear proof must exist to

hold a labor organization responsible for the Acts of the members. However, based upon the following facts, we hold that plaintiff has shown clear proof of ratification by the council.

This court thinks it is important to note that at every act of violence, there was at least one delegate of the council present either on the picket line or at the job site. Clearly, these men who were authorized by the council to monitor its picket line, were aware of the acts of violence and they either took no steps to alleviate the violence or they directly participated in same. For instance one Charles Priscopo, Business Agent for the International Union of Operating Engineers, Local 542, a member of the Council, blocked an exit to the job site by pulling his car across the driveway.

Further, Earl Henninger a Business Agent for the Carpenter's District Council, a member of the council, threatened a security guard by telling the guard that he had better know how to use the shotgun he was holding because, "I'll blow you away you cocksucker."

Additionally, Edward McClintock a Business Representative and Financial Secretary of Local 921 of the Painters Union and a delegate to the Council, threatened to "shove a video tape camera up the cameraman's ass."

All of these men, delegates to the council, have additionally been constantly at the job site and have either directed the pickets and/or observed the acts of violence which took place.

Clearly when the head of the council admits to this court that the council established the picket line and that his delegates were to monitor the activities of the pickets, and where acts of violence are either committed by its delegates, or in clear view of same and the Council takes no action to sanction

these men, it has ratified the actions of its members. A case clearly on this point is N.L.R.B. v. Teamsters, Chauffers, Helpers, etc. 592, F. 2d 921 (1979) in which the Court of Appeals of the Sixth Circuit held that ". . . lack of effective action by unions, in the face of flagrant violations of district court's order by union members, to repudiate that misconduct amounted to silent approbation and acquiescence in such activities and the objective of its offending members; union's tacit approval of acts of violence by its members during pertinent labor disputes rendered union responsible for violative conduct of its members although neither union nor union president was shown to have actually authorized specific actions of union members and disobedience by union and union president of prior orders of district court were contemptuous thereof." In N.L.R.B., supra, the union members were at least given verbal reprimands by the union president. In our present action the council took no action concerning the members who committed acts of violence.

Having determined that plaintiff has shown by clear and convincing evidence that the council has ratified the acts of its members, we now must determine what acts were committed.

The following acts are alleged to have occurred on December 9, 1981:

1. The blocking of the egress of dump trucks by Charles Priscopo.

2. The throwing of rocks at the windshield of a truck by a picket.

3. The throwing of an explosive device at a truck of plaintiff, causing a dent in the hood and damage to the paint, by David Lyons, a member of the Painters' Union.

4. Other vehicles attempting to enter the job site were stopped by groups of pickets and tires were slashed or stabbed.

5. Vulgarities, including "you fucking scab," were yelled at persons attempting to enter the job site.

On December 10, 1981, the following acts took place:

1. Trucks were blocked by pickets from entering the job site.

2. Pickets threw rocks at the trucks while other pickets slashed tires on the trucks.

On December 14, 1981, the following acts took place:

1. Four trucks were stopped by the pickets when they tried to enter the job site.

2. A chain saw was taken from the back of one truck and thrown by a picket at the back window of that truck.

3. The picket who threw the chain saw was Jack Scott, a member of the United Brotherhood of Carpenters and Joiners of America, Local 845.

4. Local 845 is a member of the Council.

5. One Clarence Riddle threw a jack at a window of a truck, punctured a tire and removed a gas cap from a vehicle.

On December 15, 1981, the following acts took place:

1. Trucks were detained as they attempted to enter the job site.

2. Edward McClintock threatened to shove a camera up the cameraman's ass.

3. Clarence Riddle tore the lid off a tool box in the rear of a truck.

On January 7, 1982 the following acts took place.

1. Trucks were again delayed by pickets as they attempted to enter the job site.

2. A picket fired marbles from a slingshot at employees of the Plaintiff.

On January 8, 1982, the following acts occurred:

1. Pickets threw six glass bottles at the job site, two of which landed near an employee of plaintiff.

On March 24, 1982, the following occurred:

1. When the truck of a sub-contractor attempted to leave the job site, the pickets, 15 to 20 in number, began throwing rocks at this vehicle.

2. Additionally, while this was happening, a second truck with a man video-taping the accident, also had rocks thrown at it.

3. Edward McClintock was on the job site and was standing near the picket who threw the rocks.

On April 7, 1982, the following occurred:

1. Pickets threw rocks at the security guards on the job site.

2. Metal spikes, tip up, were found at one of the gates leading into the job site.

3. One man on the picket line displayed a gun.

4. A subcontractor was beaten and his vehicle vandalized by a group of pickets when he went to lunch at a nearby shopping center.

On April 16, the following occurred:

1. Firecrackers were thrown at one of the Plaintiff's trucks.

2. Rocks were thrown at security guards.

3. Pickets shouted obscene names at persons trying to enter the job site.

On April 17, 1982, the following occurred:

1. A security guard heard a shot being fired in his direction.

On May 4, 1982, the following act occurred:

1. A firecracker was thrown at one of plaintiff's trucks as it was traveling on an interstate highway. The firecracker was thrown from a vehicle which had previously been seen near the job site.

2. Earl Henninger, a picket, threatened a security guard after the guard appeared holding a shotgun.

Additionally, vulgarities and obscenities were shouted at employees on a daily basis.

Defendants point out that these are isolated incidents. However, we note that the acts of violence occurred immediately prior to the job site closing down for the winter and immediately after it reopened in the spring.

We note that the evidence produced by plaintiff consisted of witnesses whom we find to be very credible as well as video tape which clearly showed these acts of violence occurring. Defendants on the other hand, presented no evidence but instead they relied on legal documents. Therefore, we have no alternative but to find that plaintiff has presented clear and convincing evidence that the violent acts complained of actually occurred.

Additionally, these acts all are in violation of the court's orders. It is well established that the court possesses the inherent power to enforce its orders and decrees by imposing penalties and sanctions for failure to obey or comply therewith. Brocker v. Brocker, 429 Pa. 513, 241 A.2d 336 (1968).

Our Superior Court in Capital Bakers, Inc. v. Local Union No. 464, etc. 281 Pa. Super. 443, 422 A.2d 521 (1980), held that state courts have the power to restrain violence, mass picketing and overt threats of violence and to preserve and protect public order and safety. Clearly that is exactly what this court is doing. Capital Bakers, supra. also stands for

the proposition that "where the dominant purpose of the proceedings and contempt Order is primarily for the benefit of a private party and the Order is remedied, and judicial sanctions are imposed to (1) coerce the Defendant into compliance with the Court's Order, and (2) in some instances to compensate the complainant for losses sustained, the proceeding is civil in nature." at Page 522. See also Knaus v. Knaus, 387 Pa. 370, 127 A.2d, 669 (1956).

Clearly the action here is civil in nature. The Superior Court in Rouse Philadelphia Inc. v. Ad Hoc 78, 274 Pa. Super. 44, 417 A.2d 1248 (1979), held that court may impose an unconditional fine upon the contemptor which may be payable to the private *parties* who have been injured. See Brocker, supra. See also United States v. United Mine Workers of America, 330 U.S. 258, 67 S. Ct. 677, 91 L. Ed. 884 (1947).

Accordingly, we make the following findings of fact and conclusions of law:

## I. FINDINGS OF FACT:

A. The council is an unincorporated labor organization composed of various construction unions.

B. Plaintiff is the general contractor for the Bethesda House Project, located in Upper Chichester, Delaware County, Pa.

C. Since November, 1981, the council has established and maintained a picket line at Bethesda House.

D. The council's delegates were present at the picket line to monitor activity for the council.

E. That at all times one or more members of the council were present at the picket line.

F. The court issued an order on December 3, 1981, enjoining the council from mass picketing

and from committing acts of violence, intimidation or coercion; as well as blocking ingress and egress to Bethesda House.

G. The council had knowledge of the December 3 order and the subsequent amendments thereto.

H. Council knew or should have known that its pickets were committing acts of violence in defiance of the court's order.

I. The council took no action to stem the tide of these violent acts.

J. The pickets have committed numerous violations of our Order as described more fully above.

K. Due to the activities of the council, the plaintiff was forced to expend monies for overtime pay for the Sheriff of Delaware County to protect its property.

L. Plaintiff has been forced to pay attorney's fees in conjunction with this action for contempt.

## CONCLUSIONS OF LAW

1. The council is an unincorporated labor organization.

2. The council established and sanctioned a picket line at the Bethesda House job site.

3. The council repeatedly violated the court's order by committing acts of violence more fully set forth above.

4. When a labor organization sanctions a picket line and has its delegates monitoring the line, it is responsible for the acts of its members when it fails to take affirmative steps to monitor and control the action of the pickets.

5. Where a labor organization, who has knowledge of acts of violence by its members and takes no steps to investigate and control these acts, they have ratified and sanctioned these acts.

6. A party found liable for civil contempt of court may be ordered to compensate the injured party for damages including attorney's fees.

For all of the above reasons, we enter the following:

## ORDER

And now, this October 20, 1982, after hearing testimony and reviewing briefs by respective counsel, the following is ordered and decreed:

1. The council is found to be in civil contempt of the court's order of December 3, 1981 as amended;

2. Clarence Riddle is found to be in civil contempt of the court's order of December 3, 1981, as amended;

3. Edward McClintock is found to be in civil contempt of the order of December 3, 1981 as amended;

4. David Lyons is found to be in civil contempt of the court's order of December 3, 1981 as amended;

5. Jack Scott is found to be in civil contempt of the court's order of December 3, 1981 as amended;

6. John Garvey is found to be in civil contempt of our order of December 3, 1981 as amended;

7. The council is ordered to pay a prospective fine of $25,000, returnable upon there being no further contemptuous acts at the Bethesda House job site.

8. The council is ordered to pay the attorneys' fees of plaintiff.

9. The council is further ordered to post a bond in the amount of $500,000 to compensate plaintiff for any additional damages.

10. The council is ordered to pay two-thirds of the sheriff's bill incurred by plaintiff.

11. Individual defendants Clarence Riddle, Edward McClintock, David Lyons, Jack Scott and John

Garvey are fined the sum of $100 each and are further ordered not to commit any further acts of contempt, under threat of being attached for indirect criminal contempt.