485 A.2d 1118

## CONSOLIDATION COAL COMPANY, a corporation, Appellant,

### v.

## DISTRICT 5, UNITED MINE WORKERS OF AMERICA, an unincorporated association; William Allen, Daniel Kuwalo, Larry Cani, Mike Kuzma, Ron Stipanovich, George Paxon, Jr., Joe Rostcheck, Ray Machusko, Paul Machusko, Robert Corey, Joe Sarso, Jack Schmitt, Patrick Niedemeyer, Robert Paul, James Lacko, Thomas Taylor, individuals.

Superior Court of Pennsylvania.

Argued April 12, 1984.

Filed Nov. 30, 1984.

356

358

Leonard Fornella, Pittsburgh, for appellant.

Ronald G. Backer, Pittsburgh, for appellees.

Before ROWLEY, JOHNSON and POPOVICH, JJ.

ROWLEY, Judge:

This is an appeal from an Order granting the appellees' preliminary objections and dismissing the appellant's complaint. In May of 1981, appellant, the Consolidation Coal Company, filed a complaint in equity requesting an injunction against (1) the International Union, United Mine Work-

ers of America, (2) District No. 5, United Mine Workers of America, (3) Larry Cani, and (4) all those acting in concert with them. A preliminary injunction was granted which prohibited the appellees from picketing in any manner that would interfere with the business of the appellant. A hearing for a permanent injunction was then scheduled for September 15, 1981. The picketing on appellant's premises ceased shortly after the preliminary injunction had been granted, so the appellant filed a motion, on September 10, 1981, to withdraw the request for a permanent injunction. The trial judge granted this motion, noting on the Order that the action was being "dismissed as moot." Reproduced Record at 271. In March of 1982, however, appellant initiated a new action, based on the same incident, requesting compensation for damages resulting from the appellees' alleged tortious interference with the appellant's contractual relations. Appellees filed preliminary objections to which the appellant filed an answer. The trial court then heard oral arguments. The trial judge acting on his own initiative, asked whether the damages action should be precluded because of the prior equity action. He concluded that the dismissal of the equity complaint barred the appellant's subsequent suit for damages, since the equity court had the power to hear a claim for damages and the appellant had failed to raise any such claim during the equity action. In addition to his conclusion that the appellant's action for damages was precluded by the prior equity action, the trial court judge adopted three of the appellees' preliminary objections as conclusions of law. This appeal, then, is from the order dismissing the appellant's claim for damages and granting the appellees' preliminary objections. We reverse and remand.

Appellant contends that the trial court erred in dismissing the damages action and in adopting the appellees' preliminary objections as conclusions of law. Appellant raises five specific issues on appeal: 1) whether the trial judge had the authority to raise the issue of claim preclusion himself when the appellees themselves failed to raise this issue; 2) wheth-

er the dismissal of the equity action constituted a final judgment on the merits which would bar a subsequent civil action for damages; 3) whether the appellant's state law claim for tortious interference with contract is preempted by federal law, thus depriving a state court of jurisdiction to resolve the dispute; 4) whether a permanent severance of an employment relationship must be shown before one can recover under a theory of tortious interference with contractual relations; and 5) whether the appellees' conduct was privileged such that they are immune from a suit for damages arising out of their picketing.

## I.

Appellant first contends that the trial judge erred in raising the claim preclusion on his own. The trial judge admits in his opinion that it was the court which raised this question first.

The appropriate procedure for raising a question of *res judicata* is contained in Pa.R.C.P. 1030. *Res judicata* is an affirmative defense which "shall be pleaded in a responsive pleading under the heading 'New Matter.' " Pa. R.C.P. 1030. The appellees did not plead *res judicata* in this manner. Nor did the appellees specifically mention *res judicata* as one of their preliminary objections. Thus, it was procedurally incorrect for the trial judge to challenge appellant's damages action after the appellees had failed to plead *res judicata* as an affirmative defense.

Despite this procedural defect, it would not serve judicial economy to end the inquiry at this juncture. If we were to remand this case at this point so that the parties could cure this procedural defect, this Court might have to review the substance of the same *res judicata* question at a later date. This type of dilemma existed in the case of *Brown v. Hahn*, 419 Pa. 42, 50, 213 A.2d 342, 346 (1965), wherein the Pennsylvania Supreme Court said:

Nothing is to be gained by sending the parties back to the trial court to set their procedural house in order before

coming once again to this Court with the identical controversy.

See also *Callery, et al. v. Blythe Township Municipal Authority*, 432 Pa. 307, 243 A.2d 385 (1968); *Ziemba v. Hagerty*, 214 Pa.Super. 381, 261 A.2d 342 (1969). Rather than to delay unnecessarily this appeal, then, we will not review the substance of the *res judicata* question here presented.

## II.

██ Appellant maintains that it was error for the trial court to conclude that the dismissal of the equity action precluded the appellant from bringing a subsequent claim for damages arising out of the same incident. This Court has determined that an action at equity can have a *res judicata* effect upon a subsequent action at law:

> Because an adjudication in equity is as conclusive as a judgment at law ... it is of no consequence that the earlier suit was brought in equity and the later action at law.

*Exner v. Exner*, 268 Pa.Super. 253, 257, 407 A.2d 1342, 1344 (1979).

██ An essential prerequisite to the application of the doctrine of *res judicata*, however, is that a valid and final judgment on the merits has been entered in a previous action. The *res judicata* doctrine is a judicial creation aimed at preventing a multiplicity of suits. It protects a party from the vexation of having to defend itself against a claim for which a final judgment has already been entered. Furthermore, it serves the public interest by keeping the courts clear of disputes that have been decisively resolved. But as a matter of fairness to the party which believes it has a valid claim, the doctrine is not applied unless there in fact was a previous action in which the party did present, or had the opportunity to present, its claim. Hence, the general rule is that the doctrine of *res judicata* cannot be applied to preclude a claim absent a final judgment on the merits in a previous action. *Bearoff v. Bearoff Brothers, Inc.*, 458

Pa. 494, 327 A.2d 72 (1974); *General Accident Fire & Life Assurance Corp., Ltd. v. Flamini,* 299 Pa.Super. 312, 445 A.2d 770 (1982).

The appellant's damages action could only be precluded, therefore, if there had been a final judgment on the merits entered in the appellant's equity action. In the equity action, the appellant was granted a preliminary injunction but withdrew its request for a permanent injunction hearing. The essential inquiry, then, is whether a preliminary injunction or the withdrawal of a request for a permanent injunction can constitute a final judgment on the merits which would preclude the appellant from bringing a second action for damages.

 A preliminary injunction cannot serve as a judgment on the merits since, by definition, it is a temporary remedy granted until that time when the parties' dispute can be completely resolved. Likewise, the fact that the request for a permanent injunction was withdrawn means that a full hearing, wherein the entire controversy could be resolved and final judgment entered, was never held. Thus, it is manifestly unjust to conclude that the appellant's claim for damages is barred by the previous equity action, when that action was never fully litigated.

 In their brief, appellees contend that there is a strong public policy in Pennsylvania against splitting a cause of action. Thus, appellee argues that the equity action should bar the action at law, since both proceedings arose from the same cause of action. What the appellees fail to appreciate, however, is the rationale that underlies this policy. A cause of action cannot be split into two separate claims since it is seen as inappropriate to drag a party through the litigation process twice. But when, as here, the first action is never fully litigated, a party is not subjected to the inconvenience of having to re-litigate. Furthermore, when a final judgment is not entered in the first action, a controversy remains for the courts to resolve.

Thus, the underlying reasons for application of the *res judicata* doctrine are simply not present in the instant case.

In support of their argument that a cause of action cannot be split into two separate claims, appellees rely on examples in which a judgment on the merits was indeed entered in the first action. Appellees cite *Spinelli v. Maxwell*, 430 Pa. 478, 243 A.2d 425 (1968), for instance, for the proposition that in a trespass action, a party that recovers for damage to property cannot maintain a separate action to recover damages for personal injuries suffered. In *Spinelli*, however, the plaintiff recovered property damages only after an arbitration panel had granted him an award and the trial court had entered judgment on his behalf. Thus, in *Spinelli*, there was a full hearing on the merits wherein the plaintiff had the opportunity to raise all possible claims against the defendant.

Appellees also rely on the *Restatement (Second) of Judgments*, § 24, Illustration 19, as authority for the rule that an unsuccessful equity action can bar a subsequent action at law. That illustration concerns an out-of-state student who sued a state university because he was charged more for tuition than in-state residents are charged. The suit was commenced in equity to enjoin the university from billing him at the higher rate. The student lost, but filed a second action, at law, to recover a portion of the tuition that he had previously paid. The second action was dismissed, because law and equity courts have merged, and the student could have brought both claims in one action. The student's failure to take advantage of this opportunity resulted in the loss of his legal claim. The illustration specifically states, however, that judgment was entered in the first action against the student after the court had determined that the higher billing rate for out-of-state students was not unconstitutional. Here again, a final judgment was entered after a full hearing on the merits. Hence, these examples do not support appellees' position since the examples are factually dissimilar to the appellant's situation. One cause of action cannot be split

into two separate claims, each brought in a different proceeding, provided that a final determination was made in the first action which would preclude one from bringing the second action at a later date.

A case which *is* factually similar to appellant's is *Walworth Company v. United Steelworkers of America*, 443 F.Supp. 349 (W.D.Pa.1978). Walworth and the United Steelworkers of America, AFL-CIO, were parties to a collective bargaining agreement. Walworth filed a complaint in equity to enjoin the defendants from continuing an allegedly illegal strike. But the strike ended shortly thereafter, and the parties entered into a stipulation of settlement and discontinuance. The court then dismissed the equity action *with prejudice.* When Walworth subsequently attempted to recover damages resulting from the work stoppage, the U.S. District Court ruled that the action at law was barred by the previous equity action. The Court specifically noted that the dismissal of the earlier suit "with prejudice" constituted a judgment on the merits. 443 F.Supp. at 351, note 1.

Appellant's action for damages, on the other hand, was dismissed "as moot" by the trial court judge. The crucial distinction between the trial court judge's Order of Dismissal in this case and the dismissal in *Walworth* is that the *Walworth* order contained the words "with prejudice." The dismissal of an action with prejudice indicates that, as in *Walworth,* the dispute between the parties has been resolved and the court will not allow either party to commence a new action based on the same claim. Here, though, the appellant's claim was not resolved in the equity action. Thus, the trial judge could not have dismissed the equity action with prejudice. The trial court judge did choose, though, to dismiss the equity action "as moot." That an action is "moot" suggests that there is a legal issue involved in a case, but because of the circumstances surrounding the case, the issue has become an academic one and will not be resolved. What "mootness" does *not* suggest is that an issue was fully considered and a final judgment entered. Such judicial consideration *would* be

necessary before the doctrine of *res judicata* could be applied to preclude appellant from bringing its claim for damages.

 Another distinction to be drawn between the appellant's case and *Walworth* is that there was a settlement of the first action in *Walworth.* When a party attempts to bring a claim arising out of a cause of action that was previously settled, that claim is merged in the previous agreement of settlement. *Bearoff v. Bearoff Brothers, Inc.,* 458 Pa. 494, 327 A.2d 72 (1974). But here there is no evidence that the appellant in the instant case settled anything with the appellees. Rather, the appellant merely withdrew a request for a permanent injunction. The trial judge then dismissed the equity action "as moot." There was no mention of a settlement. There was no mention of the action being dismissed with prejudice. A dismissal of an action without prejudice is not a determination of the merits of that action. *Fannie v. Chamberlain Mfg. Corp., Derry Div.,* 445 F.Supp. 65 (W.D.Pa.1977).

In his opinion, the trial judge stresses that once a court obtains jurisdiction for an equity action, it may retain that jurisdiction to do complete justice between the parties. That is, a court hearing an equity claim has the power to hear related legal claims so that the entire dispute can be resolved in one judicial proceeding. The gist of the trial court's decision, then, is that it had the ability to hear both equitable and legal claims and the appellant, failing to bring his claim for damages along with his request for an injunction, lost the opportunity to sue for damages when the equity action was dismissed as moot.

 Certainly the trial court had the power to hear the claim for damages in addition to the request for injunctive relief. But this alone does not justify the conclusion that the dismissal of the equity action precludes the appellant from initiating an action for damages. Here the equity action was dismissed before the merits of the appellant's claim were given thorough judicial consideration. Thus, the

appellant did not have the opportunity to bring a claim related to the equity claim while the merits of the equity claim were being considered. A judgment on the merits was not entered in the equity action. Nor was there anything done in the equity action, such as a dismissal with prejudice, which could qualify as a judgment on the merits. Therefore, the *res judicata* doctrine cannot be applied to appellant's case, as nothing was "formerly adjudicated." Appellant is consequently entitled to proceed with its claim for damages arising from the appellees' alleged interference with the appellant's contracts.

After concluding that the appellant's claim for damages was precluded by the previous equity action, the trial judge adopted the appellees' preliminary objections, with appellees' brief in support thereof, as conclusions of law. Before remanding this case, then, we will first consider the accuracy of those legal conclusions.

### III.

The first of appellees' preliminary objections which the trial court adopted as a legal conclusion was that the tort of intentional interference with contractual relations has been, in labor relations cases, preempted by federal law, thus depriving a state court of jurisdiction to hear a tortious interference claim which arises out of a labor dispute. Appellee claims to have derived this rule from the *Wilkes-Barre Publishing Co. v. Newspaper Guild of Wilkes-Barre, Local 120*, 647 F.2d 372 (3rd Cir.1981), case. But the holding in *Wilkes-Barre* is inapplicable here.

In *Wilkes-Barre*, the plaintiff publishing company sought to recover from certain members of a union who had encouraged several of the plaintiff's employees, then on strike, to accept employment with another newspaper that was a competitor of the plaintiff. The plaintiff alleged that it had a collective bargaining agreement with the employees, and that anyone who induced the employees to breach the collective bargaining agreement was intentionally interfering with the plaintiff's contractual relations. In deciding

whether the tort claim should be governed by federal law, Judge Gibbons of the Third Circuit said:

> The issue is not the nature of the remedy sought for the alleged violation, but whether the remedy sought may require that the court from which it is sought, state or federal, interpret a collective bargaining agreement.

*Id.* at 380. Thus, *Wilkes-Barre*, should not be read as standing for the proposition that *any* tortious interference claim that arises in the context of a labor dispute will be preempted by federal law. Instead, the holding in *Wilkes-Barre* means that a tortious interference claim, like any other state law claim, will be preempted if a state court would have to interpret a collective bargaining agreement in disposing of that claim.

█ The reason that appellant's claim for tortious interference with contractual relations is not preempted by federal law is that the state courts do not have to interpret a collective bargaining agreement in deciding whether the appellant deserves compensation. Appellant alleges that the appellees interfered with the employment contracts between the appellant and its "supervisory, executive, and clerical employees." (Reproduced Record at 5a.) Since these employees are all non-union, a state court hearing this case would have no need to interpret a collective bargaining agreement between the appellant and the union. Since there is no need to interpret such an agreement, the trial court has jurisdiction to resolve this dispute.

█ Furthermore, shortly after the passage of the National Labor Relations Act, the United States Supreme Court established that state courts still have jurisdiction over labor disputes when the complaint alleges tortious conduct on the part of the picketers. In *United Construction Workers v. Laburnum Construction Corporation,* 347 U.S. 656, 663–664, 74 S.Ct. 833, 837, 98 L.Ed. 1025 (1954), the Supreme Court concluded: "[C]ongress has neither provided nor suggested any substitute for the traditional state court procedure for collecting damages for injuries caused by tortious conduct." Subsequently, in *In-*

*ternational Union, United Automobile, Aircraft and Agricultural Implement Workers of America v. Russell,* 356 U.S. 634, 641, 78 S.Ct. 932, 936, 2 L.Ed.2d 1030 (1958), the Supreme Court reaffirmed that the National Labor Relations Act did not "expressly or impliedly deprive the employer of its common law right of action in tort for damages." In a case which appellees rely on in their brief, *Billy Jack For Her, Inc. v. New York Coat, Suit, Etc.,* 511 F.Supp. 1180, 1183 (S.D.N.Y.1981), the Court emphasized in a footnote: "It is clear that federal labor law does not preempt state law to the extent state law proscribes violent picketing."

 That Congress intended for state courts to hear tort claims based on the violent conduct of picketers has also been recognized by Pennsylvania Courts:

[S]tate Courts do have the power to restrain violence, mass picketing and overt threats of violence and to preserve and protect public order and safety and to prevent damage even if, absent such conduct, the activities complained of would constitute unfair labor practices or protected activities over which the National Labor Relations Board would have jurisdiction. *Altemose Construction Company v. Building and Construction Trades Council,* 449 Pa. 194, 296 A.2d 504 (1972) ... State jurisdiction has prevailed in such instances because the compelling state interest, in the scheme of our federalism, in the maintenance of domestic peace is not overridden in the absence of clearly expressed congressional direction.

*Capital Bakers, Inc. v. Local Union No. 464, etc.,* 281 Pa.Super. 384, 388, 422 A.2d 521, 523 (1980). Therefore, if the appellant can establish that the appellees did interfere with its contractual relations by means of threats and violent conduct, the appellant can recover damages in state court since the proper forum to hear cases involving violence intermeshed with picketing is clearly a state court.

 Appellees also contend that if any cause of action arises out of the picketers' conduct, that cause of action belongs to the individual employees rather than the appel-

lant, a corporate entity. We disagree. Concluding that the tort cause of action belongs to the employees rather than the appellant would deny the appellant, and consequently the appellant's shareholders, a remedy for damages suffered as a result of the appellees' alleged tortious conduct. There is nothing which prevents the appellant itself from suing to recover damages. Indeed in *United Construction Workers v. Laburnum Construction Corporation, supra,* the corporation sued Union agents for interfering with the corporation's employees as they attempted to complete a construction project. Similarly, here, the appellant has the right to maintain an action for damages caused to the corporation after the appellees allegedly interfered with the appellant's employment contracts.

## IV.

■■■ The second of the appellees' preliminary objections which the trial court adopted as a conclusion of law concerns not jurisdiction, but the appellant's ability to make out a prima facie case. The trial court concluded that the appellant could not proceed with its cause of action since it had not alleged that the appellees' interference led to a complete severance of the contractual relationship between the appellant and its employees. However, appellant need not go so far as to show that its employment contracts were terminated as a result of the appellees' interference to recover damages for the alleged tortious interference with appellant's contractual relations.

■■■ Appellees are correct in stating that Section 766 of the *Restatement (Second) of Torts,* which defines the cause of action for intentional interference with contractual relations, is the standard that should be applied to this case:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss

resulting to the other from the failure of the third person to perform the contract.

The *Restatement (Second)* section was cited with approval and applied in *Adler, Barish, Daniels, Levin, Etc. v. Epstein,* 482 Pa. 416, 393 A.2d 1175 (1978), and has since been applied in numerous cases. *See Allied Security, Inc. v. Security Unlimited, Inc.,* 265 Pa.Super. 297, 401 A.2d 1219 (1979); *Thompson Coal Company v. Pike Coal Company,* 488 Pa. 198, 412 A.2d 466 (1979); *Yaindl v. Ingersoll-Rand Company Standard Pump-Aldrich Division,* 281 Pa.Super. 560, 422 A.2d 611 (1980); *Temporaries, Incorporated v. Krane,* 325 Pa.Super. 103, 472 A.2d 668 (1984).

Appellees are incorrect, however, in their interpretation of Section 766. Appellees maintain that the appellant must show a permanent severance of the employment relationship between the appellant and its employees before it can make out a cause of action for tortious interference with contractual relations. Section 766 does not state that an employment relationship must be completely severed before the injured party may sue for damages, nor is there a Pennsylvania case which so holds. In their brief, appellees have cited tortious interference cases which involved a termination of an employer-employee relationship. None of these cases, however, states, or implies, that interference resulting in a complete break-off in the employment relationship is a prerequisite to recovery for this tort. To interpret Section 766 in such a fashion would mean that third persons could interfere with an employer-employee relationship for a day, a month, or longer, yet avoid liability if the employees returned to work after the interference period had ceased. This would effectively deny the employer a remedy for conceivably extensive damages suffered during the interference period. The only justification for the denial would be that, despite the damages suffered, the employment relationship was never *permanently* severed. We do not believe that such a result was ever intended by the *Restatement* Drafters, or by Pennsylvania Courts that have relied on Section 766.

Therefore, on remand, the appellant will not be required to establish that the appellees' alleged interference led to a complete severance of the contractual relationship between the appellant and its employees to recover under a theory of tortious interference with contractual relations.

## V.

The final preliminary objection which the trial court adopted as a legal conclusion was that the appellees' picketing was privileged conduct and that appellees are immune from a suit arising out of a lawful strike.

Indeed, peaceful picketing is, in almost all situations, conduct which is privileged and is protected by the United States Constitution. *Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). Appellant, however, alleges threats and acts of violence on the part of the appellees. If the appellees did, in fact, exhibit such behavior, they exceeded the boundaries of privileged conduct. The United States Supreme Court has repeatedly declared that picketing coupled with violence is conduct which is not worthy of constitutional protection, and that the states have the power and obligation to create laws which afford relief to those harmed by violent conduct. *United Construction Workers v. Laburnum Construction Corp.,* 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025 (1954); *International Union, United Automobile, Aircraft and Agricultural Implement Workers of America v. Russell,* 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958), *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959), *New York Telephone Company v. New York State Department of Labor et al.,* 440 U.S. 519, 539–540, 99 S.Ct. 1328, 1340–1341, 59 L.Ed.2d 553 (1979).

Appellees suggest that Section 767 of the *Restatement (Second) of Torts* should be considered in determining whether the appellees alleged interference was "improper." With this much we agree. But if it is determined as a

matter of fact that the appellees interfered with the appellant's employment contracts in a threatening or violent manner, there is no basis, under the United States Constitution or Pennsylvania law, for the contention that the appellees' conduct was privileged and that the appellees are consequently immune from liability.

Since the appellant's claim for damages is not barred, the Order dismissing the appellant's claim for damages is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

Jurisdiction is relinquished.