Robert J. GILMORE and
Noah Liff, Plaintiffs,

v.

John Gordon BERG, Harold M. Winston, Stephen T. Marcoe, Jr., Rosalind Schneider, Martin R. Barker, Howard Green, Gilbert Tucker, Cooper River Office Building Associates, American Real Estate Associates, Inc., Management of Cooper River, Inc., Office Buildings of Cooper River, Inc., Pat Charles, Charles, Sturm & Masters and Norman S. Cohen, Defendants.

Civ. No. 86–4694 (SSB).

District Court of United States,
D. New Jersey.

Dec. 16, 1992.

Howard Kaufman, Steven Coren, Kaufman, Coren & Ress, Philadelphia, PA and Manya Kamerling, Haddonfield, NJ, for plaintiffs.

Frank A. Luchak, Duane, Morris & Heckscher, Marlton, NJ, for defendant Norman S. Cohen.

Michael S. Silberman, Philadelphia, PA, for defendants John Gordon Berg, Cooper River Office Bldg. Assocs., American Real Estate Assocs., Inc., Management of Cooper River, Inc., Office Bldgs. of Cooper River, Inc.

Andrew Karcich, Sherman, Silverstein & Kohl, Pennsauken, NJ, for defendant Martin Barker.

## OPINION

BROTMAN, District Judge:

Presently before the Court is the motion for summary judgment of Defendants John Gordon Berg; Cooper River Office Building Associates ("CROBA"); American Real Estate Associates, Inc. ("AREA"); Management of Cooper River, Inc. ("MCR"); Office Buildings of Cooper River, Inc. ("OBCR"); Norman S. Cohen; and Martin R. Barker. For the reasons set forth below, Defendants' motion will be granted in part and denied in part.

## BACKGROUND

In December of 1980 Plaintiffs purchased unregistered securities in CROBA, a New Jersey limited partnership. According to Plaintiffs' Amended Complaint, on December 13, 1980 OBCR, a Nevada corporation owned by Defendants Berg, Howard Green, and Gilbert Tucker, paid $2,500,000 for two New Jersey office buildings and the land on which they stand. On the same day, OBCR sold the two buildings for $4,770,000 and leased the underlying land for a seventeen-year term to Defendant MCR. Also on that same day, MCR sold the two buildings and assigned the lease to Defendant AREA for $5,300,000. MCR is a wholly-owned subsidiary of AREA, a company controlled by Berg. Plaintiffs claim that the December 13, 1980 transactions constituted an illegal scheme concocted by the Defendants to impair the value of their investment. Specifically, Plaintiffs complain that the Defendants failed to disclose in their offering memorandum the "step-up" in the purchase of the two buildings—that is, the difference between the $2,500,000 paid for the buildings by OBCR and the $5,300,000 ultimately paid by AREA. Plaintiffs allege that the Defendants' actions diminished the likelihood they would realize desired profits and appreciation, caused an inflated basis on the property for federal income tax purposes, and misled them into believing they would be afforded substantial depreciation and interest deductions.

Plaintiffs commenced this action in November of 1986, claiming that as a result of the Defendants' alleged fraudulent misrepresentations and omissions, they lost profits, lost tax deductions and credits, and incurred substantial interest and penalties. Plaintiffs claim that Defendants violated section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5, promulgated thereunder; sections 1962(a)–(d) of the

Racketeer Influenced and Corrupt Organizations Act (RICO); and numerous state common law and statutory provisions.

In their present motion for summary judgment, Defendants argue, among other things, that Plaintiffs' claims under section 10(b) and Rule 10b–5 are untimely. This issue, which the Court has already addressed several times in this case, has proven to be unusually problematic. The issue first arose in June of 1987 when the Court denied a motion by Defendants to dismiss Plaintiffs' 10b–5 claims. *See Gilmore v. Berg*, No. 86–4694, slip op. at 8 (D.N.J. June 24 1987). Based on the law at that time, the Court followed the usual rule that when Congress has failed to provide a statute of limitations for a federal claim, a court must adopt the limitation period from the most analogous law of the forum state. *Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1941–42, 85 L.Ed.2d 254 (1985). Accordingly, based on an analogy to the limitation period prescribed by the New Jersey Uniform Securities Act, N.J.Stat. Ann. § 49:3–71, the Court ruled that the applicable limitation period was two years from the time Plaintiffs knew or should have known of the allegedly unlawful conduct of the Defendants.

The issue what limitation period applies to Plaintiffs' 10b–5 claims was next addressed in April of 1991. *See Gilmore v. Berg*, 761 F.Supp. 358 (D.N.J.1991). Several Defendants had moved for summary judgment, arguing that Plaintiffs' claims were barred under the rule established by the Court of Appeals for the Third Circuit in *In re Data Access Systems Securities Litigation*, 843 F.2d 1537 (3d Cir.), *cert. denied sub nom. Vitiello v. I. Kahlowsky & Co.*, 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988). In *Data Access* the Court of Appeals held that the limitation period applicable to claims under Rule 10b–5 should be measured by a uniform federal standard rather than by the most analo-

gous state statute of limitations. The standard established by the *Data Access* court was based on the one-year/three-year limitation period applicable to several express causes of action contained in the Securities Exchange Act. Specifically, the Court of Appeals held that an action under Rule 10b–5 must be commenced one year after the plaintiff discovers the facts constituting the violation, and in no event more than three years after such violation. Because in this case the conduct of which Plaintiffs complain occurred in 1980, and Plaintiffs did not commence this action until 1986, a straightforward application of the *Data Access* rule would have required the dismissal of Plaintiffs' claims. But Plaintiffs argued against a straightforward application, contending that the *Data Access* rule should operate only prospectively—a question the *Data Access* court expressly declined to decide.

Consequently, the Court considered whether the limitation period established in *Data Access* should be applied retroactively in this case to bar Plaintiffs' 10b–5 claims. *See Gilmore v. Berg*, 761 F.Supp. 358, 364–67 (D.N.J.1991). Under the law in this Circuit as it existed at that time,[1] the question whether *Data Access* should be given retroactive effect required a case-by-case analysis under the three-part test set forth by the Supreme Court in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). In its decisions applying the *Chevron Oil* test to determine whether *Data Access* should be applied retroactively,[2] the Third Circuit considered three factors: (1) whether *Data Access* overruled established precedent upon which the plaintiff may have relied, *see, e.g., Gruber v. Price Waterhouse*, 911 F.2d 960, 965 (3d Cir.1990); (2) whether retroactive application of the new rule would further or retard the rule; and (3) whether retroactive application would be inequitable.

---

1. The Court of Appeals had addressed the question whether the limitations period established in *Data Access* ought to be given retroactive effect in four cases: *Hill v. Equitable Trust Co.*, 851 F.2d 691 (3d Cir.1988), *cert. denied*, 488 U.S. 1008, 109 S.Ct. 791, 102 L.Ed.2d 782 (1989); *McCarter v. Mitcham*, 883 F.2d 196 (3d Cir.

1989); *Gatto v. Meridian Medical Assocs., Inc.*, 882 F.2d 840 (3d Cir.1989), *cert. denied*, 493 U.S. 1080, 110 S.Ct. 1136, 107 L.Ed.2d 1041 (1990); and *Gruber v. Price Waterhouse*, 911 F.2d 960 (3d Cir.1990).

2. *See* footnote 1.

Plaintiffs failed to satisfy the first factor: No clear precedent on the applicable limitation period for 10b–5 actions existed in this Circuit at the time *Data Access* was decided or at the time Plaintiffs' cause of action arose in 1980. *See McCarter v. Mitcham*, 883 F.2d 196, 203 (3d Cir.1989). Moreover, because Plaintiffs conceded they were unaware of the operative facts underlying their cause of action until 1986—at least twenty-eight months after the three-year absolute bar of *Data Access* had passed—they could not possibly have relied on a longer limitation period. The second factor was neutral. *See id.* at 204. However, Plaintiffs satisfied the third factor. Because Plaintiffs had moved forward through over four years of litigation on the joint understanding of the parties that New Jersey's two-year discovery rule applied, the Court reasoned that it would have been unfair to apply *Data Access* retroactively to dismiss their claims. As a result, Defendants' motion for summary judgment on Plaintiffs' 10b–5 claims was denied.

The issue whether Plaintiffs' 10b–5 claims are untimely arose once again in July of 1991, when Defendants filed a motion for reconsideration of the Court's April 5, 1991 decision refusing to apply *Data Access* retroactively. Defendants argued that the Supreme Court's decision in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), rendered on June 20, 1991, required that a one-year/three-year limitation period be applied in this case to bar Plaintiffs' 10b–5 claims.

Like the Court of Appeals for the Third Circuit in *Data Access*, the Supreme Court in *Lampf* held that the limitation period applicable to claims under Rule 10b–5 should be measured by a uniform federal standard of one year from the discovery of the violation, and no more than three years after the violation. Defendants pointed out that the Supreme Court applied the one-year/three-year rule to dismiss the 10b–5 claims of the plaintiffs in *Lampf*, despite a vigorous dissent by Justice O'Connor, who argued that under *Chevron Oil* the one-year/three-year rule should be applied only prospectively. Defendants argued that this Court should follow the majority's ex-

ample. But because the *Lampf* majority failed to address the issue of retroactivity or Justice O'Connor's dissent, this Court declined to alter its decision refusing to apply *Data Access* retroactively in this case. *Gilmore v. Berg*, No. 86–4694 (D.N.J. July 29, 1991) (order denying motion for reconsideration).

### DISCUSSION

#### *The 10b–5 Claims*

In their present motion for summary judgment, Defendants once again argue that Plaintiffs' 10b–5 claims are untimely. Defendants point out that when their motion for reconsideration was argued, neither party brought to this Court's attention the Supreme Court's decision in *James B. Beam Distilling Co. v. Georgia*, —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), and this Court did not consider that decision in making its ruling. *Beam*, which was decided on the same day as *Lampf*, resulted in six opinions, none of which was signed by more than three Justices. However, it is clear that "[t]he one common thread among the positions of these six Justices is that all agree if a rule is applied in the case currently before the Court, it must be applied to all other pending cases." *In re Graham*, 973 F.2d 1089, 1102 (3d Cir.1992). Because the Supreme Court applied its new one-year/three-year rule to dismiss the 10b–5 claims of the plaintiffs in *Lampf*, *Beam* requires that the one-year/three-year rule be applied to all other pending securities fraud cases—including this one. Thus, putting *Lampf* and *Beam* together means that Plaintiffs' 10b–5 claims ought to be dismissed.

But the issue is not so simple. Under section 476 of the Federal Deposit Insurance Corporation Improvement Act of 1991, Plaintiffs' claims may still be viable. The FDIC Improvement Act of 1991, Pub.L. No. 102–242, was signed into law by the President on December 19, 1991. Section 476 of the Act adds to the Securities Exchange Act of 1934 a new section 27A, which is entitled "Special provision relating to statute of limitations on private causes action." Section 27A provides in pertinent part that "[t]he limitation period for any

private civil action implied under section 78j(b) of this title that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991." 15 U.S.C. § 78aa–1(a). June 19, 1991 is the day before *Lampf* and *Beam* were decided. Thus, the effect of section 27A is to prevent the retroactive application of *Lampf.*

Defendants argue that section 27A provides no benefit to Plaintiffs because it is unconstitutional, an issue that has divided the courts. *Compare Henderson v. Scientific–Atlanta, Inc.,* 971 F.2d 1567 (11th Cir. 1992) *and Anixter v. Home–Stake Prod. Co.,* 977 F.2d 1533 (10th Cir.1992) (finding section 27A constitutional) *with Plaut v. Spendthrift Farm, Inc.,* 789 F.Supp. 231 (E.D.Ky.1992) *and In re Brichard Sec. Litig.,* 788 F.Supp. 1098 (N.D.Cal.1992) (finding section 27A unconstitutional). That difficult constitutional issue need not be resolved here, because whether or not section 27A is constitutional, Plaintiffs' 10b–5 claims must be dismissed. *See United States v. Levy,* 865 F.2d 551, 553 (3d Cir. 1989) (unnecessary decisions of constitutional issues should be avoided).

■ Assuming—without deciding—that section 27A is unconstitutional, Plaintiffs' 10b–5 claims are untimely. For, as discussed above, a straightforward application of *Beam* requires that the one-year/three-year rule of *Lampf* be applied retroactively in this case. Since Plaintiffs concede that they failed to file suit until six years after their causes of action allegedly accrued, their 10b–5 claims must be dismissed.

■ The more difficult question is what effect section 27A has on Plaintiffs' 10b–5 claims, assuming—again, without deciding—that it is constitutional. As noted above, section 27A requires courts considering the timeliness of 10b–5 claims pending on June 19, 1991 to look to "the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991." 15 U.S.C. 78aa–1(a). On June 19, 1991 the limitation period applicable in

this Circuit was the one-year/three-year rule provided by the Third Circuit's decision in *Data Access;* and the principles of retroactivity were those provided by *Chevron Oil* and the Third Circuit's decisions applying *Chevron Oil* to determine whether *Data Access* should be given retroactive effect in particular cases.[3]

Thus, the Court must revisit the question whether *Data Access* should be given retroactive effect under the three-part test set forth by the Supreme Court in *Chevron Oil.* The Court finds that Plaintiffs fail to satisfy the first factor of the test. No clear precedent on the applicable limitation period for 10b–5 actions existed in this Circuit at the time *Data Access* was decided or at the time Plaintiffs' cause of action arose; and because Plaintiffs conceded they were unaware of the operative facts underlying their cause of action until 1986, they could not have relied on a limitation period longer than the three-year outside limit established in *Data Access.* Because Plaintiffs fail to satisfy the first *Chevron Oil* factor, the one-year/three-year rule of *Data Access* must be applied retroactively in this case, and Plaintiffs' 10b–5 claims must be dismissed as untimely. For the first factor is a threshold test; if it is not satisfied, there is no need to consider the remaining two. *Gluck v. United States,* 771 F.2d 750, 756 n. 6 (3d Cir.1985) ("Under *Chevron Oil,* a case is presumed to have retroactive effect unless, as a threshold matter, it established 'a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed' " (quoting *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971))); *Marino v. Bowers,* 657 F.2d 1363, 1372 (3d Cir.1981) (Weis, J., dissenting) ("it must be recognized that the first factor presents a threshold inquiry"); *see also United States v. Johnson,* 457 U.S. 537, 550 n. 12, 102 S.Ct. 2579, 2587 n. 12, 73 L.Ed.2d 202 (1982) (under *Chevron Oil* establishment of a new principle of law is the "threshold test for determining whether or

**3.** *See* footnote 1.

not a decision should be applied nonretroactively"); *Milton v. Wainwright,* 407 U.S. 371, 381 n. 2, 92 S.Ct. 2174, 2176 n. 2, 33 L.Ed.2d 1 (1972) (Stewart, J., dissenting) ("[a]n issue of the 'retroactivity' of a decision of this Court is not even presented unless the decision in question marks a sharp break in the web of the law"); *Jackson v. Bank of Hawaii,* 902 F.2d 1385, 1390 (9th Cir.1990) (first criterion is threshold test); *EEOC v. Vucitech,* 842 F.2d 936, 941 (7th Cir.1988) ("[t]he first condition is [ ] a threshold"); *Kremer v. Chemical Constr. Corp.,* 623 F.2d 786, 789 (2d Cir. 1980) ("unless the first factor is satisfied, there is no occasion to consider the other two"), *aff'd on other grounds,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). Accordingly, applying the limitation period this Court would have applied on June 19, 1991, Plaintiffs 10b–5 claims are now dismissed as time-barred.

## The RICO Claims

Defendants contend that Plaintiffs' RICO claims must be dismissed. They point out that their alleged violations of section 10(b) and Rule 10b–5 are predicate acts upon which Plaintiffs' RICO claims are based. Defendants argue that because Plaintiffs' 10b–5 claims are time-barred, Plaintiffs are precluded from pursuing their RICO claims.

Defendants' contention lacks merit. A RICO claim may be pursued even though independent claims for predicate acts upon which the RICO claim is based are time-barred. *See Halperin v. Jasper,* 723 F.Supp. 1091, 1096–97 (E.D.Pa.1989); *Hill v. Equitable Bank,* 655 F.Supp. 631, 655 (D.Del.1987), *aff'd on other grounds,* 851 F.2d 691 (3d Cir.1988), *cert. denied,* 488 U.S. 1008, 109 S.Ct. 791, 102 L.Ed.2d 782 (1989). For RICO was not designed to provide redress to one injured by another's commission of predicate acts. Rather, RICO was designed to provide redress to one injured by another's use of certain predicate acts to invest in, acquire or maintain an interest in, or conduct the affairs of an enterprise whose activities affect interstate commerce. *Morley v. Cohen,* 610 F.Supp. 798, 808 (D.Md.1985). "To interpret [the offenses composing the predicate acts] to have more than a definitional pur-

pose would be contrary to the legislative intent of Congress." *United States v. Forsythe,* 560 F.2d 1127, 1135 (3d Cir.1977).

In addition, the alleged 10b–5 violations of the Defendants are not the only predicate acts upon which the Plaintiffs' base their RICO claims. Plaintiffs also allege that the Defendants engaged in mail fraud and wire fraud under 18 U.S.C. §§ 1341, 1343. Accordingly, Defendants' motion for summary judgment on Plaintiffs' RICO claims must be denied.

## The State Law Claims

Finally, based on their argument that Plaintiffs' 10b–5 and RICO claims must be dismissed, Defendants argue that under *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Court should refuse to exercise pendent jurisdiction over Plaintiffs' state law claims. Because the Court concludes that Plaintiffs may pursue their RICO claims, Defendants' motion to dismiss Plaintiffs' state law claims will be denied.

## ORDER

This matter having come before the Court on the motion of Defendants for summary judgment; and

For the reasons set forth in the Court's opinion of this date;

IT IS on this 14th day of December hereby ORDERED that Count I of Plaintiffs' Amended Complaint, which alleges claims under section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b–5, promulgated thereunder, is DISMISSED; and

IT IS FURTHER ORDERED that Defendants' motion for summary judgment on Counts II, III, IV, and V of Plaintiffs' Amended Complaint, which allege claims under the Racketeer Influenced and Corrupt Organizations Act, is DENIED; and

IT IS FURTHER ORDERED that Defendants' motion for summary judgment on Counts VI, VIII, IX, X, XI, XII, and XIII of Plaintiffs' Amended Complaint, which as-

sert claims under statutes and common law of the State of New Jersey, is DENIED.